All v. Wilkie Good morning, your honors. May it please the court, the secretary has conceded that he violated Mr. Hall's due process rights by ignoring 25 requests for the recalibration to be done, and by disregarding that he had a duty as a matter of law to comply with the remand, and by willfully denying and unreasonably delaying compliance with the remand, and that the proposed sanctions for his contempt of court were appropriate. Even though those concessions would resolve this case, we submit to the court that the constitutional questions about Mr. Hall's due process rights, specifically the right as a matter of law for the secretary to comply with the remand, being a due process right, should be addressed by the court, and that the issue of whether there was an unreasonable delay should be addressed by the court. Okay, I kind of lost you in your argument. You've got a decision now from the board, and that was the basis for your writ of mandamus that you had not gotten a decision yet. It was only part of the basis for the mandamus, your honor, because we submitted that even if the secretary ultimately came out with a decision, there was still a denial of due process for now 1,217 days. Well, what is the number of days from the time they got the remand to the time you over two years, your honor? Is there some black letter law, two years is too long, that's a denial of due process when it's two years versus a year and a half? There's no black letter law about that, your honor, but the reality is that the decision that's just been issued is also in violation of the 2016 court order. The court said at that recalibration should be done and Mr. Hall should then have the opportunity to submit both argument and evidence. Well, you recognize obviously that it's not within our jurisdiction to adjudicate the correctness or lack of correctness of an opinion that was issued a month ago, right? The opinion was actually issued a couple of weeks ago, your honor. Okay, but you understand that we're not in a position to evaluate any challenges you may have to that opinion. Correct, your honor, I understand that, but our position is that that opinion at best stopped the clock from running. There was a non-compliance clock that began when the court issued its mandate and that clock never stopped running until this October 22nd decision was put on the table, but in the interim for 1,217 days. At least a portion of that time, maybe a short My understanding was that you were initially refusing to participate in the proceedings, which delayed it for at least several months. Am I wrong about that? You are, your honor, and the reason for that is we weren't refusing to participate just for the matter of delay. We were number one refusing to participate because my client was hospitalized for a period of time, but we kept saying if you're going to do a hearing, you have to have the recalibration. The hearing had been done during that period of time. All we kept saying was prior to the time we filed the writ of mandamus, you have a responsibility to do the recalibration. You didn't do the recalibration. You can't go ahead with the hearing until you do the recalibration, and the government's position in their brief is that we never had a responsibility to do the recalibration in any specific time. They basically said the court ordered a recalibration based on their request, but we have no responsibility to, in fact, do the recalibration at any point in time. Now, the difficulty with that is that number one, it takes the idea of a concession and throws it out the window, because as we pointed out... I'm a little confused, so help me out here. Did, is your view now, did the government refuse to do a recalibration, or did the board refuse to do one in its decision it issued a few weeks ago? Your Honor, they did a recalibration, and they claimed that it was based on their understanding of what was appropriate. Okay. I would suggest to you that both legally and factually, that recalibration was incorrect, but I understand that it's not before you. It's not before us. I understand that, but... As far as what's before us, so the two and a half years that the case was, it was remanded, and then it was two and a half years that, until you filed your writ of Approximately. It was more than two years, Your Honor, and then we've gone another year, so we are, between the time of the mandate of the 2016 decision and the October 22nd decision by the board, was 1,217 days, and our contention is that irrespective of the fact that there was, in fact, a recalibration, assuming that that was done in the BBA decision, there was a 1,217 day period of time where Mr. Hall's due process rights were violated. All right. Let's, for the sake of this discussion, agree that it took a long time, for whatever reason, for that recalibration to be done. We still need to get to the next step of the remedy that you're requesting. Yes, and we have suggested, Your Honor, that sanctions are appropriate against the government for their contempt of court. You're requesting not a personal sanction. You're requesting an award of the relief that was originally requested. We're requesting an award of relief. It wasn't what was originally requested, Your Honor, but our position is that if you take a look at the decision, this court's decision, and You're not requesting the effective date? We are requesting the effective date going back to 1972, Your Honor, and then we also requested some additional relief in terms of the rating that would be applied to the disability, the hearing disability that's at issue. So we do request that the date go back to 1972. We picked that date for reasons based in the record that the original decision was simply wrong and ignored factual evidence that was in the record. But we've suggested that there is, in fact, an appropriate sanction that should be applied against the secretary in this particular case for his unwillingness to adhere to the court's order. The court ordered... What is the sanction you're asking for? We're asking for Mr. Hall to be given a 50 percent rating and that the rating should go back to 1972. You're asking for the relief that was requested on the merits? Yes, ma'am, we are. And because to be awarded as a sanction against the government. To be awarded as a sanction for the contempt of court of the government. And that's... I'm really not clear. And that's based on the fact that you're just... of what the board did recently in its decision two weeks ago, which is not a decision that's before us that's been appealed. I'm sorry, Your Honor, I'm not sure I understand. When you're saying the sanction is because the board failed to do something? No, we're saying that the sanction is that the Secretary of the Veterans Affairs asked for, in 2016, that the Veterans Court require a recalibration. The court said, we grant your request. I then asked 25 times in the next two years for the secretary to carry out the recalibration. The recalibration was not done. Our position was that this is a rule of law question. The court issued a decision that said, you have to do something. And the secretary ignored it and basically has said in all of his papers today, to date, that he had no obligation at any specific time to comply with the requirement. He could do it at some indefinite time that he chose, but it was going to be done at his choice whenever he decided to do it. And therefore, there was no requirement that anything could be done to force him to do it otherwise. And I'd like to point out that in Marbury v. Madison, Chief Justice Marshall gave an example of a disabled veteran. And if the disabled veterans were put on a pension list by the Congress, that pension list was something that was supposed to be a duty that the Secretary of War simply had to apply. So Marshall said in Marbury that the duty that was implied from the Act of Congress was something that the secretary really didn't have any discretion about. He had to do it. Now, that Act of Congress is much like the decision of the 2016 Veterans Court. The court said, you have to do a remand. The Secretary of Veterans Affairs had no discretion, especially since he'd asked for the remand for the purpose of the recalibration to begin with. He had no duty to say, I'm not going to do it. He had a responsibility to comply with the court's order. And by not doing that, he was in contempt of court. Now, what happened at the Veterans Court under Mandamus proceedings was that the court was basically presented a set of smoke and mirrors. There was supposedly lots of process that was going on, none of which had anything to do with a specific requirement to do the recalibration. It was all other process relating to hearings. So your charge here with respect to violation of due process and the need for sanctions is not when the board was going to issue its opinion and they were required to do the recalibration on the basis of a specific request by the Secretary. So your position basically is some short period after the remand, the recalibration should have been done with input from the veteran and that after that short period, everything else was in violation of the remand order from the Veterans Court. Your Honor, I'm in my rebuttal, but may I answer your question? Sure. You used the term short period and we are not suggesting that short period was 10 days or 30 days. Some period of time, but in the Martin case, this court determined that two years might or might not be unreasonable and might or might not be a denial of due process under the circumstances. And our position was that after asking 25 times for this recalibration to be done and it wasn't done, at the end of that two-year period of time, it was really inappropriate to say that the Secretary should continue to delay and delay. And so we took the position that that was appropriate for mandamus. And we've said to the Secretary, okay, now you've come down with a recalibration of some kind, but there was still 1,217 days from the time of the mandate at the Court of Veterans Appeals to the actual issuing of that decision. There should be some recompense, some solution that should be given to Mr. Hall for the fact that his due process rights were violated during that period of time. I guess I'm unclear. If they had done a recalibration on week two, whatever they did would have no force in effect until the Board actually decided the case as they did two weeks ago, right? I'm having a hard time differentiating between your arguments with respect to the recalibration and just the fact that the Board was sitting on the case and didn't issue a decision. But the Court itself issued, I'm sorry, the Board did the recalibration in October of this year. Okay. They were not authorized to do that recalibration. The Court said it should be returned to the regional office. The regulation that is cited in that decision that was issued October 22nd refers to a hearing clinic doing a recalibration. It does not refer to the Board doing the recalibration. And because we never... Don't you appreciate that those are issues that you would raise in connection with challenging what the Board did in this October 2019 decision? That's not part and parcel of what's here before us, which had to do with the delay in issuing. I understand that, Your Honor. And the point we're trying to make is... Mr. Hall has a right to say to the courts, this should be something that was a contempt of court. This should be something... There should have been a sanction issued. Essentially, if you say... This being what? I guess that's what I'm... The delay. The delay of 1,217 days, which was unreasonable. Your Honor, I'll continue, but I'm already into my rebuttal time. Okay. Well, do you have further... All right. Why don't you say your rebuttal? We'll hear from the government. Thank you, Your Honor. May it please the Court. First of all, I think I'll just start this way. Yes, a couple of weeks ago, the Board did issue a decision. It did conduct a re-deliberation because that was the subject of the mandamus petition for the Veterans Court, and that's on appeal to this Court. We would submit that the mandamus petition issue is now moot. He's free. Mr. Hall is free to challenge the substance of that in any challenge he may make with respect to that appeal. He can make an argument. When you say that, you mean the October 2019? Exactly, the October... So why is it moot if he asked... So let's forget about the arguments he has with respect to the for relief in addition to just the decision we did issue. I think he asked for sanctions. Yes, he has a motion for sanctions. So that's a different topic. My only comment up to this point was with respect to the writ. The writ was asking for specific performance relief. In that particular case, it was asking for a Board decision. Veterans Court entertained that and denied it. And that's what's on appeal here. And I will note, just as an aside, with respect to these references of 1,200 days of delay, that was about two years. That's what this Court's sitting over. The Veterans Court's decision is on appeal. There's no writ to this Court asking for relief. So the analysis that the Court performs is with respect to the Veterans Court's decision, and what did the Veterans Court base that decision upon? Well, if we're only looking at the Veterans... Okay. And we could get into the merits of that. I was prepared to until this decision came out recently. But I now think, though, that the mandamus petition has been moved. He did file, as you indicate, Your Honor, a motion for sanctions, which was also denied for many of the same reasons that the mandamus petition was denied. That motion was contemporaneous with the mandamus petition? As far as we can tell, as it was included in... There was two, not to be confused with the motion for an oral argument in which he's filed separately. It was wrapped up, and the Court treated it as a separate motion for sanctions, as they have in the past, the Harvey decision being a particular example of that, and went ahead and dealt with that separately. And the Secretary briefed it separately, too. In contrast to the suggestion in the blue brief, the Secretary did respond at Appendix 331 to 334 to the motion for sanctions, indicating that... And he's preserved that here on appeal. So that's an interesting question. The argument for, in the blue brief, argues that the Secretary's failure to basically defend the Stiegel violation, as far as I can tell, amounted to a concession that sanctions were appropriate, and that the Veterans Court erred by not issuing sanctions given that concession. Our response to that in the red brief is, I don't... We don't understand how that failure to brief an issue could be a concession on an issue like this, which is within the discretion of the Veterans Court to make. But moreover, as I just indicated a moment ago with reference to Appendix 331 to 334, the government did respond to the argument for sanctions. It's just that it appears Mr. Hall wasn't satisfied with the government's response. Mr. Hall believes, and it's crystallizing now, that he was entitled to a recalibration by the regional office. I think that seems to be what's undergirding a lot of this. But there's nothing in the decision from the Veterans Court that initially remanded the case that suggests that the board couldn't issue such a decision on recalibration. But I'm confused, because that all, to me, has to do with whether he wants to challenge that in the October 2019 ruling. Correct. And not in this. So can we go back to this? You suggested it might be moot. And my question in that regard is, wouldn't he arguably have been entitled to either sanctions or a directive that he win the case in its entirety or something else? So just because the board ultimately issued the decision while it was pending before us, how does that necessarily automatically result in it's moot when there are other issues that we have to look at? As Judge Newman indicated with respect to earlier, the remedy of mandamus is now not available or not required. So let's set aside the mandamus part of what he filed before the Veterans Court. Because that's now been granted. He now has that remedy. He has a board decision. It actually contains a recalibration analysis. And he is now in a position, to the extent he disagrees with how the board did it, or even whether it was appropriate for the board and not the regional office to do it, he has a basis to deal with that. And that's the appeal of that decision to the Veterans Court. And he can make arguments in that brief with respect to whether it was appropriate for the board to do it or it should have been done by the regional office in the first place. Mr. Hockey, it's clear that this was an unusually long delay. It looks from the briefs, they said, one of the agencies said, we didn't even say it didn't get into the RO agenda to do a recalibration. It is difficult to figure out how this fault arose and what's appropriate. At the same time, there is something that went wrong. I mean, what about attorney's fees, for instance, or some other form of equalizing? So that's the type, Your Honor, that's, first of all, what happened here on remand basically was, there's two things we need to remember about this case. One about the case and one generally about the original Veterans Court remand order. That original Veterans Court remand order, which is that Appendix 12, offers and orders the VA to consent, to allow Mr. Hall to submit additional evidence in argument. In other words, he's free to add to the record as a result of that order on Appendix 12 in 2016. That's different than these cases cited by the court more recently when it denied the mandamus, Groves and Harvey, where the remand was to the board to take a specific action. As the court can appreciate and has recognized in the Martin case recently, when a remand involves additional development, time periods, the two years, two and a half thing, you have to take into account. It's like track factor three, I think. You take into account the nature of what needs to be done on remand. So first of all, when the Veterans Court tells the Secretary on the hearing issue in 2016 that Mr. Hall is entitled to add additional record evidence, what the board did with that was to say, okay, we will send it back to the RO in December 2016 to allow the issuance of a VCA notice and allow him to submit evidence, which he did in March of 2017. But at the same time, coming up were these other issues, the lung issue and the renal issue. They were coming up from the RO to the board. So after the remand from the Veterans Court, which sends the hearing issue down to the board, back to the board, around that same time, September of 2016, the regional office sends up a denial on the lung and the renal issue. So now the board has all kinds of issues involving Mr. Hall, different claims. What it decides to do in December of 2016 is because it has to comply with the VCA notice allowing more evidence on the hearing issue, takes all of Mr. Hall and is dissatisfied at the same time with the completeness or thoroughness of the evaluations that support the regional office's denial on the, what I'll call, other issues claims, takes all of this and sends it back in December of 2016 to the regional office and says, fix this, which the regional office does. Most of the delay occurring throughout 2017 has to do with trying to get Mr. Hall in to get his medical exams on the other issues. The Q issue, which went down, they did, Mr. Hall's counsel did submit in March of 2017 the information that was responsive to the VCA notice issue on that. On calibration? He submitted evidence addressing that. I think he submitted evidence addressing a lot of things, but it would have included the calibration issue. At that point, it's possible that someone could have separated the claims again. But we would submit it wasn't inappropriate, and the Fetchings Court doesn't appear to think it was, to not separate the claims because it was operating generally under sort of the principle that when they get a bunch of claims together, they try to address them all before issuing a final decision. It's generally consistent with 38 CFR 19.38, which is the regulation that talks about what to do on remand. And the medical examination that was contemplated had to do with the remand and pulmonary issues? Correct. Much of the delay from about May through December of 2017 was associated with trying to get Mr. Hall in for these exams. So what happened? Were those issues covered in the recent opinion? Yes. The other two issues? Yes, they are. And they led to the result was? Well, they were first covered by the board when the board in December, a year later, December 2017, which is a day after the medical exams get submitted on the other issues, the board issues, the regional office issues a decision continuing the denial on the other issues and also denies the Q claim. Now, Mr. Hall would take issue with that because it would be that decision that one would expect a fulsome analysis of the hearing recalibration issue. But instead, the regional office simply says, we've considered the additional evidence provided and we don't change our mind. So then the thing gets packaged back up and it goes to the board and that's the time in early 2018 when the board first discovers and then attempts to schedule a hearing at the board level. So there was a hiccup, a minimum? There was certainly a hiccup. Somebody lost something or wasn't? It's possible, here's what we don't know for sure. It's possible that the regional office did some sort of recalibration but didn't bother to stick it in their decision. Or it's possible they just thought they were developing the case and didn't understand that they could do a recalibration issue. Irrespective, so that may have been a hiccup with respect to the recalibration issue. Well, how much delay did that cause? Well, I don't know if you can associate any delay to it because at the same time, they're working on these sort of live claims with respect to the renal and to the lung. So they're all sort of packaged together. They come up, then there's the hearing delays, first with respect to the administrative judge not understanding he was supposed to have a hearing on the particular hearing question. And then getting rescheduled for that and then Mr. Hall's desire to have the petition that he had then pending before the hearing was passed before he agreed to go and have another hearing, which it turned out there was another hearing in April of earlier this year. They did have the hearing. The Veterans Court issues its, or the board issues its decision a couple of weeks ago and it does, not only addresses the recalibration issue, but it also addresses the other two issues that had been remanded by the board a year earlier, a year and a half earlier. So what are we supposed to do with these cases? Well, so here's how I see it. There were two basic motions, if you will, pending before the Veterans Court that were denied, addressed and denied by the Veterans Court and are presently in some fashion before this court. Certainly the writ was, the denial of the writ was appealed to this court. We wouldn't dispute that that's an issue before the court, but we would argue that the issuance of the board decision now basically takes the remedy off the table, so therefore moots the case because he was seeking, as part of the writ process, issuance of a board decision that dealt with the recalibration. He now has that and can take that to the Veterans Court if he's unsatisfied with it in any number of ways. Like I said, substantively or procedurally, those avenues are available to him to take that. The other issue that the Veterans Court addressed in its decision at Appendix 5 was the motion for sanctions. It had various remedies associated with it. We would first take issue with the idea of granting the relief contrary to meeting your statutory requirements under 50107, but setting that aside, it is true that the Veterans Court has entertained civil sanction motions where they felt that one party or the other was basically acting contrary to the interests of the court. In some ways it's similar, the way it's been looked at by the Veterans Court, to a writ, only it involves a different type of remedy. The problem I see with respect to that remedy is I don't see a challenge to the Veterans Court's finding on the merits on the sanctions in the blue brief. Instead, I see this argument that's been fashioned based upon the Secretary's briefing of that issue. And I've addressed our response to that already, which I think, A, and I'll just skip to number one, the merits, we do respond. We did respond to the motion on the briefing. But even arguably if we hadn't responded, since it's an exercise of the court's discretion to try to enforce what it perceives to be gross negligence with respect to its own orders, the court could issue a decision as it did in this case, denying the relief, saying that they thought that the actions of the Secretary did not amount to that level. And yet we would still be able to defend that court opinion before this court. So I don't see any of this concession argument amounting to a situation in which this court could then simply say, yeah, the Veterans Court erred by addressing the merits of the sanctions instead of simply saying, Secretary, because you didn't issue a board decision that had the recalibration analysis in it at that time, you lose under Stegall. As we argued, there was no decision at that time. We can't defend the merits of a decision that didn't exist. But what we can do is address the real issue that was before the court, which was the delay. And we did address the delay and explain what we were doing at every step of the process. The Veterans Court entertained that argument and ruled consistent with our argument that any delays were understandable. And that would be a merits-type issue before this court, but I don't see it in the blue brief. But even if it is somewhere in there, we would submit that as the procedural history of this case indicates, the Secretary took steps all along the way. And if the court were to engage in an analysis with respect to the merits of that, one of the big factors I would say looking at is the nature of the remand. When the remand here from the Veterans Court, its own remand, which it's now going to be at the time, looking at whether the Secretary was in compliance, offered the appellant the opportunity to submit additional evidence, as opposed to those cases where it was just a matter of doing some sort of mathematical thing like in Groves and the other department. The analysis has taken, like the track factors suggest, what does the agency have to do? That was done here. All of those factors were examined by the trial court, by the Veterans Court, consistent with this court's decision in Martin. We submit that there was no error, there was no abuse of discretion on the part of the Veterans Court in reaching its decision, which in this case was that although it was a little upset with the Secretary's pickups, it didn't find that the Secretary's action merited either mandamus or sanction. Your Honor, I'd like to clarify a couple of things. First of all, Your Honor, with respect to the question of whether Mr. Hall had an opportunity to respond and submit evidence about this recalibration, absolutely not. The February 2017 issue was the question, did he submit evidence? No, and the government is confused about that. The reason why they're confused, there's a site in their brief where they say, well, Mr. Allen submitted the M21, which is this supposed regulation that governs the hearing. We didn't submit that and say, this is what you have to do. We said, this is what you gave to the Veterans Court. We're simply asking you to comply with the remand that you asked the Veterans Court to do. Well, what happened in February of 2017? Anything or? Nothing. Mr. Hockey has referred to an event in February, I think it was, or March of 2017. And what does that refer to? I'd have to go back and look, Your Honor, but we did not ever have an opportunity to submit evidence about the recalibration because we didn't know what it was going to be. We had no idea what the result was going to be. We simply said 25 times to the VA, you have an obligation to do what you said you were going to do in the remand. Do the recalibration. We'll then respond to it. We've never had a chance to do that because they never did the recalibration until that decision came out in October of this year. Now, Your Honor, I want to point out, too, that we are not in any way arguing about that decision. I'm not trying to suggest that that decision is before you. I am trying to say that from the time of the mandate in 2016 from the Veterans Court to the time that decision was issued, that period of delay, 1217 days, you want to, Mr. Hockey wants to argue whether some of it was attributable to Mr. Hall. We would contend no because we've never seen the recalibration at all. But that 1217 day period of time is an unreasonable delay. And we've taken the position also that there was no argument that could be made that they responded to the sanctions argument. If you look at every document that was submitted by the government to the court below, they created the smoke and mirrors defense saying we're doing something. Essentially what they were doing was process, but the process had nothing to do with the recalibration. You will not see them once respond in any way to the idea that the recalibration was either required or was being done. You will not see them respond to the specific sanctions for the fact that the recalibration was not done. They basically were saying because we gave him process, we are therefore not subject to sanctions. And our position is the process had nothing to do with the recalibration. It was process that was smoke and mirrors. We'll schedule a hearing. Just so I understand, so your view is the entitlement to sanctions is based on the delay and not doing the recalibration? In part, but it's also based on their concession, Your Honor. Because they never responded to the arguments about due process or the right to compliance with a remand as a matter of law or the sanctions for the specific act of not doing the recalibration. Those specific issues, they never responded to in any way under any circumstances in the case below. And our position would be that under the law of both the Court of Appeals for Veterans Claims and this court, those are absolute concessions because they never responded to them. If you look at the paperwork, you will not see a response that references the recalibration itself. It's all of this other process. So they were basically cooking a kettle and smoke was coming up and they're blowing it to the court and saying, we're doing what you said that we were supposed to do. When in reality, there was nothing like that. And I'd like to end with this, if I may, Your Honor. Justice Marshall, in talking about the veterans example that he gave in Marbury versus Madison, said the following. When the veteran's name was included on the report that Congress had ordered, if the secretary should refuse to do so, would the wounded veteran be without remedy? Is it to be contended that where the law in precise terms, in our particular case, the remand order, directs the performance of an act in which an individual is interested, the law is incapable of securing obedience to its mandate? Is it on account of the character of the person against whom the complaint is made? Is it to be contended that the heads of departments are not amenable to the laws of their country? This is absolutely a rule of law question. The Court of Appeals for Veterans Claims issued a decision. It was not complied with by the secretary. They're in contempt of court. We respectfully request that you reverse the decision, that you grant the sanctions approved, and that you find that Mr. Hall had a due process right to the remand that was promised to him by the secretary and that was not provided to him. Thank you, Your Honors. We thank both sides. The case is submitted. That concludes our proceeding for this morning.